**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

_____

(1) KYLE GULLEY, as Next of Kin and
on behalf of the ESTATE OF MELISSA
BOWMAN,

        Plaintiff,

v.

(1) AMERICAN WIND TRANSPORT
GROUP, LLC, a Pennsylvania limited
liability company;
(2) LARRY BELLAH, an individual;
(3) DOES 1-10,

        Defendants.

Case No. CV-22-1005-JD

_____

**MOTION FOR SUMMARY JUDGMENT & BRIEF IN SUPPORT
OF DEFENDANTS BELLAH & AMERICAN WIND**

_____

Bryan E. Stanton, OBA #19225
Charles A. Schreck, OBA #32863
PIERCE COUCH HENDRICKSON
  BAYSINGER & GREEN, L.L.P.
1109 N. Francis Ave.
Oklahoma City, Oklahoma 73126
Telephone: 405-235-1611
Facsimile: 405-235-2904
bstanton@piercecouch.com
cschreck@piercecouch.com
*Attorneys for Defendants,
American Wind Transport Group, LLC
and Larry Bellah*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ....................................... 1

   I.  STATEMENT OF THE CASE ................................................................................ 1

   II.  STATEMENT OF UNDISPUTED MATERIAL FACTS .................................. 3

   III.  ARGUMENTS & AUTHORITIES ........................................................................ 5

       PROPOSITION ONE: PLAINTIFF'S CAUSE OF ACTION FOR
       NEGLIGENT ENTRUSTMENT FAILS AS A MATTER OF LAW ............ 5

       PROPOSITION TWO: BOWMAN'S DRIVING BEHAVIOR WAS THE
       DIRECT, INTERVENING, AND SUPERSEDING CAUSE OF THE
       ACCIDENT ............................................................................................................ 14

       PROPOSITION THREE:   PUNITIVE DAMAGES ARE
       INAPPROPRIATE IN THIS CASE AND SHOULD NOT BE SUBMITTED
       TO THE JURY ...................................................................................................... 17

   IV.  CONCLUSION ....................................................................................................... 20

CERTIFICATE OF SERVICE ........................................................................................ 21

# TABLE OF AUTHORITIES

Page(s)

Cases

*Amparan v. Demir*,
No. 1:15-CV-00045 WJ/GJF, 2017 WL 4542875 (D.N.M. Feb. 13, 2017) .................... 8
*Annese v. U.S. Xpress*,
CIV-17-655-C, 2019 WL 1246207 (W.D. Okla. Mar. 18, 2019) ................. 8, 11, 18, 20
*Askew v. R & L Transfer, Inc.*,
676 F. Supp. 2d 1298 (M.D. Ala. 2009) .......................................................................... 9
*Barger v. Mizel*,
1967 OK 38, 424 P.2d 41 ............................................................................................... 7
*Berg v. Bryant*,
1956 OK 336, 305 P.2d 517 ........................................................................................... 7
*Broesche v. Bullock*,
427 S.W.2d 89 (Tex.App.-Houston [14th Dist.] 1968) ................................................ 11
*Butler v. Okla. City Pub. Sch. System,*
1994 OK CIV APP 22, 871 P.2d 444 ............................................................................ 15
*Cardenas v. Schneider*, CIV-14-386-R,
2020 WL 5947588 (W.D. Okla. Oct. 7, 2020) ....................................................... 17, 18
*Chamberland v. Roswell Osteopathic Clinic, Inc.*,
27 P.3d 1019 (N.M. Ct. App. 2001) ............................................................................. 14
*Coker v. Moose*,
1937 OK 67, 68 P.2d 234 ............................................................................................... 7
*Colombo v. Flemings*,
43 F.3d 1465 (4th Cir. 1994) ........................................................................................ 10
*Comcast Corp. v. Nat'l Ass'n of Afr. American-Owned Media*,
140 S.Ct. 1009 (2020) ................................................................................................... 14
*Conway v. Lone Star Trans., LLC*,
No. 19-CV-658-CVE-FHM, 2020 WL 609750 (N.D. Okla. Feb. 7, 2020) ................. 10
*Cox v. Theus*,
1977 OK 158, 569 P.2d 447 ......................................................................................... 17
*Craft v. Triumph Logistics, Inc.*,
107 F. Supp. 3d 1218 (M.D. Ala. 2015) ......................................................................... 9
*Dayton Hudson Corp. v. Am. Mut. Liability Ins. Co.*,
1980 OK 193, 621 P.2d 1155 ....................................................................................... 17
*Eisenhour v. Cnty.*,
897 F.3d 1272 (10th Cir. 2018) .................................................................................... 14
*Fleming v. Stifolter*,
656 F. Supp. 2d 764 (W.D. Tenn. 2009) (applying Arkansas law) ................................ 9
*Fox v. Mize*,
2018 OK 75, 428 P.3d 314 ....................................................................................... 7, 10

*Fuller v. Neundorf*,
   1956 OK 31, 293 P.2d 317 .................................................................................... 18, 19
*Fulton v. Cutter Equip., LLC*,
   CIV-17-261-RAW, 2018 WL 1385963 (E.D. Okla. Mar. 19, 2018) ............................ 18
*Gaines–Tabb v. ICI Explosives, USA, Inc.*,
   160 F.3d 613 (10th Cir. 1998) .............................................................................. 14, 15
*Gowens v. Barstow*,
   2015 OK 85, 364 P.3d 644 (quoting OUJI-Civ. No. 5.6)............................................. 18
*Green v. Harris*,
   2003 OK 55, 70 P.3d 866 ............................................................................................ 6
*Green v. Markovitch*,
   385 F. Supp. 3d 1190 (N.D. Ala. 2019)......................................................................... 9
*Gregory v. Lindamood Heavy Hauling, Inc.*,
   No. CIV-22-327-R, 2022 WL 2792203 (W.D. Okla. July 15, 2022).............................. 8
*Gummo v. Ward*,
   57 F. Supp. 3d 871 (M.D. Tenn. 2014).......................................................................... 11
*Hardy v. Sw. Bell Tel. Co.,*
   1996 OK 4, 910 P.2d 1024 ............................................................................................ 15
*Hartman v. U.S.*,
   923 F.Supp.2d 1287 (W.D. Okla. 2013)......................................................................... 15
*Henry v. Merck & Co.,*
   877 F.2d 1489 (10th Cir. 1989) .................................................................................... 15
*Hinds v. Warren Transport, Inc*.,
   1994 OK CIV APP 52, 882 P.2d 1099 ................................................................... 18, 19
*Hines v. Nelson*,
   547 S.W.2d 378 (Tex. App.-Tyler 1977, no writ) ......................................................... 11
*Hinshaw v. Padda*,
   No. 4:20-CV-474-TCK-SH, 2021 WL 4899109 (N.D. Okla. Oct. 20, 2021) ................. 9
*Johnson v. Loutzenhiser*,
   No. CIV-20-704-D, 2020 WL 7327320 (W.D. Okla. Dec. 11, 2020)........................... 10
*Johnson v. Mid–South Sports, Inc.,*
   1991 OK 17, 806 P.2d 1107 ......................................................................................... 14
*Kohler Transp., Inc. v. Cent. States Trucking Co*.,
   No. CIV-19-1019-R, 2021 WL 1254682 (W.D. Okla. Apr. 5, 2021) ........... 8, 11, 13, 14
*Lawson v. Parkwood Indus. LLC*,
   No. 3:21-CV-247-ECM, 2023 WL 1997704 (M.D. Ala. Feb. 14, 2023)........................ 8
*Lockhart v. Loosen,*
   1997 OK 103, 943 P.2d 1074 .................................................................................. 14, 15
*Loyd v. Salazar*, No. CIV-17-977-D,
   2020 WL 7220790 (W.D. Okla. Dec. 7, 2020).............................................................. 10
*Mafua v. McKenzie*,
   No. 1:18-CV-00064-HCN, 2019 WL 5310244 (D. Utah Oct. 21, 2019)........................ 6

*Martinez v. Carson*,
  697 F.3d 1252 (10th Cir. 2012) ..................................................................................... 15
*McCarley v. Durham*,
  1954 OK 35, 266 P.2d 629 .............................................................................................. 7
*McLaughlin v. Nat'l Benefit Life Ins. Co.*,
  1988 OK 41, 678 P.2d 716 ............................................................................................ 17
*Mock v. Fitzgerald*, 21-CV-4,
  2-SWS, 2021 WL 7209513 (D. Wyo. June 16, 2021) ...................................................... 6
*Morris v. Giant Four Corners, Inc.*,
  294 F. Supp. 3d 1207 (D.N.M. 2018) .............................................................................. 6
*Murrow v. Penney*,
  2023 OK 91, 535 P.3d 1275 .......................................................................................... 16
*Myers v. Bhullar*,
  609 F. Supp. 3d 1232 (W.D. Okla. 2022) ........................................................................ 6
*Nichols v. Gipson*,
  No. CIV-21-779-D, 2021 WL 5762800 (W.D. Okla. Dec. 3, 2021) ................................ 9
*Ostmeyer v. McDowell,*
  No. 87-1720-K, 1991 WL 228338 (D. Kan. Oct. 24, 1991) ............................................ 6
*Phillips v. Super Servs. Holdings, LLC*,
  189 F. Supp. 3d 640 (S.D. Tex. 2016) ........................................................................ 8, 13
*Phipps v. Brunkhorst Trucking, Inc.*,
  No. 21-CV-03464-RM-NRN, 2023 WL 3305935 (D. Colo. May 8, 2023) .................... 6
*Rimes v. MVT Servs., LLC*,
  No. 19-CV-0282-CVE-JFJ, 2020 WL 2559942 (N.D. Okla. May 20, 2020) ............... 10
*Sanchez v. S&H Transportation, Inc.*,
  No. 20-CV-0374-CVE-SH, 2022 WL 1213127 (N.D. Okla. Apr. 25, 2022) .................. 8
*Schriner v. Gerard*,
  No. CIV-23-206-D, 2023 WL 3138026 (W.D. Okla. Apr. 27, 2023) ........................... 10
*Sheppard v. R&S Transp., LLC*,
  No. 5:16CV141-RWS-CMC, 2018 WL 2292818 (E.D. Tex. Apr. 25, 2018) ............... 10
*Sides v. John Cordes, Inc.*,
  1999 OK 36, 981 P.2d 301 ............................................................................................ 18
*Sinclair v. Hembree & Hodgson Constr., LLC*,
  CIV-18-938-D, 2020 WL 3965010 (W.D. Okla. July 13, 2020) ............................... 8, 12
*St. Clair v. Edwards*,
  No. CIV-19-00981-PRW, 2021 WL 1131711 (W.D. Okla. Mar. 24, 2021) . 8, 11, 12, 13
*Sw. Greyhound Lines, Inc. v. Rogers*,
  1954 OK 40, 267 P.2d 572 ............................................................................................ 17
*Thom v. Bristol-Myers Squibb Co.*,
  353 F.3d 848 (10th Cir. 2003) ...................................................................................... 15
*Train v. City of Albuquerque*,
  629 F. Supp. 2d 1243 (D.N.M. 2009) ............................................................................ 15

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
   570 U.S. 338 (2013) ..................................................................................................... 15
*Waddle v. Stafford*,
   1924 OK 309, 230 P. 855 ............................................................................................. 7
*Waller Truck Co. v. Morton*,
   CIV.A. 13-2249-KHV, 2014 WL 5139723 (D. Kan. Oct. 10, 2014) .............................. 8
*Wilcox v. Homestake Mining Co.*,
   619 F.3d 1165 ....................................................................................................... 15, 16
*Worsham v. Nix,*
   2006 OK 67, 145 P.3d 1055 ............................................................................. 15, 16, 19
*Wright v. Weaver*,
   681 F. Supp. 2d 786 (E.D. Tex. 2010) .......................................................................... 11

Rules

Fed. R. Civ. P. 56 .................................................................................................................. 1

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, American Wind Transport Group, LLC ("AWT") and Larry Bellah ("Bellah") (collectively "Defendants"), pursuant to Fed. R. Civ. P. 56 and LCvR 56.1, move the Court for an Order granting summary judgment in their favor and against the Plaintiff, Kyle Gulley, as next of kin and behalf of the Estate of Melissa Bowman. In support, Defendants submit the following brief.

### I.   STATEMENT OF THE CASE

This survivor action arises from a rear-end collision near Enid between a tractor-trailer hauling a wind turbine blade and a pilot car for that tractor-trailer. On August 26, 2020, the tractor-trailer (owned by American Wind and operated by Larry Bellah) and pilot car (operated by Melissa Bowman) were westbound on Hwy. 412 when Bowman illegally stopped at a railroad crossing along Hwy. 412 in front of Bellah's 220 ft. tractor-trailer. Bowman's pilot car and Bellah's truck were supposed to be working as a team to transport the turbine part from a depot east of Enid.



The two-vehicle tandem were part of a three-truck, three pilot car convoy tasked with transporting the large turbine parts through Enid to a wind farm west of town. This convoy had transported parts from the depot through Enid along this precise route several times before August 26, 2020. Each time, Bowman was the pilot car for Bellah's truck. And each time, Bellah was the last of the trucks in the convoy. In other words, Bowman had been Bellah's pilot car to navigate the subject railroad crossing many times prior to the accident. It is not in dispute that (a) Bowman and Bellah had navigated this crossing before without incident, (b) she had used her radio to communicate with Bellah about the crossing on the prior occasions, (c) Bowman did not slow down or stop at the intersection during the previous instances in which they navigated the railroad crossing, and (d) two other trucks in the convoy had already crossed the tracks and reported the tracks as clear. On August 26, 2020, for reasons that will be forever unknown, Bowman decided to stop at the railroad crossing. It is not clear why she stopped, but the evidence shows that she did so in violation of statute. Bowman's negligence caused the accident.

On August 26, 2022, Gulley filed this survivor action against Bellah and American Wind. No other children or next of kin joined the lawsuit. In his Petition, he included two causes of action: (1) negligence via *respondeat superior* and/or negligence *per se*, and (2) negligent entrustment.[1] Defendants are entitled to summary on those claims based on the factual record available to the parties, as explained below.

---

[1] In response to Defendant's Second Requests for Admission, Plaintiff stipulated he was not pursuing a claim for negligent hiring, training, supervision, and retention. [Exh. 1].

## II.  STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     On August 26, 2020, Bellah was driving the subject tractor-trailer on behalf of American Wind. [Exh. 2, Deposition of Larry Bellah (July 14, 2023), 7:23-8:6].

2.     Bellah was hauling wind turbine blades for American Wind in and around Enid, Oklahoma. [Exh. 2, 8:10-9:1].

3.     Bellah would haul the blades for about forty-five minutes from the east side of Enid to the west side of Enid. [Exh. 2, 9:2-4; Exh. 3, Deposition of Charles Daniels (Aug. 21, 2023), 13:4-6, 14:5-16:10]

4.     Bowman was the lead pilot car for Bellah's tractor-trailer. [Exh. 2, 9:15-17; Exh. 4, Deposition of Joseph Regan (Sept. 26, 2023), 26:6-28:1].

5.     Bellah and Bowman were part of a three truck, six pilot car convoy. [Exh. 2, 9:5-14; Exh. 4, 17:8-12; Exh. 5, Deposition of Sonja Regan (Sept. 26, 2023), 10:17-12:21].

6.     The convoy would take essentially the same route every time they would go on a run, which included the subject railroad crossing. [Exh. 4, 34:13-38:22].

7.     Before Bellah and Bowman attempted to cross the subject railroad crossing, two other trucks, operated by Joe and Sonja Regan, had already navigated through said crossing. [Exh. 4, 17:21-18:3].

8.     The pilot cars for those trucks communicated via radio that the tracks were clear. [Exh. 4, 36:9-37:23; Exh. 5, 16:12-24].

9.     Bowman had not stopped at the subject railroad crossing as Bellah's pilot car before the subject accident. [Exh. 2, 11:2-12; 23:24-25].

3

10.     Neither Bellah nor Bowman were required by law to stop at the crossing. [Exh. 3, 23:15-24:22].

11.     The subject crossing was the first railroad crossing the convoy encountered that day after leaving the equipment depot. [Exh. 2, 12:1-24; Exh. 4, 34:5-12].

12.     The convoy – with Bowman as Bellah's specific pilot car – had navigated the subject crossing "numerous" times before the subject accident. [Exh. 2, 13:6-16; Exh. 5, 13:5-24].

13.     Bowman was required to communicate with Bellah if she was going to stop at a railroad crossing. [Exh. 4, 16:9-19].

14.     Before the convoy left the depot, Joe Regan conducted a safety meeting in which he told Bowman to communicate over the radio if she needed to stop at a railroad crossing. [Exh. 4, 22:10-25:16].

15.     Bowman and Bellah had communicated on the radio before they arrived at the subject crossing; there is no reason to believe her radio was not working at the time of the accident. [Exh. 4, 34:13-38:22].

16.     Bowman did not tell Bellah she was going to stop at the subject crossing (or slow, for that matter). Bowman did not say anything over the radio. [Exh. 4, 19:16-20:24; 24:13-38:22].

17.     Bowman came to a stop on the tracks, which caused Bellah to immediately get on the radio and frantically ask why she had stopped. [Exh. 2, 20:18-21:3, 22:1-23:19; Exh. 3, 19:16-20:24; Exh. 4, 40:15-41:13; Exh. 5, 18:5-19:9].

4

18.     There was a vehicle to Bellah's left and the crossing to his right, meaning he could not swerve to miss the pilot car. [Exh. 2, 24:5-14].

19.     Bellah "wasn't going that fast" when he noticed that Bowman had stopped. [Exh. 2, 24:15-18]. When prompted by Gulley's lawyer, Bellah guessed he was maybe going between 20-30 mph. [Exh. 2, 25:1-2. *See* 25:4-5 ("You can't hold me to it because I'm not looking at the speedometer")].

20.     Bellah has held a commercial driver's license for more than 29 years. [Exh. 2, 7:19-22].

21.     There is no evidence that Bellah had received a ticket within three years of the accident. [Exh. 6, Annual Review of Driving Record, AWT 1279].

22.     There is no evidence in the record that his CDL had ever been restricted (other than corrective lenses), revoked, or suspended in the three years before the subject accident. [Exh. 6]

23.     There is no evidence in the record that Bellah has ever been in an at-fault accident. [*See* Exh. 6].

### III.   ARGUMENTS & AUTHORITIES

## PROPOSITION ONE: PLAINTIFF'S CAUSE OF ACTION FOR NEGLIGENT ENTRUSTMENT FAILS AS A MATTER OF LAW.

Under Oklahoma law, negligent entrustment of a vehicle requires proving three elements: "(1) a person who owns or has possession and control of a vehicle allowed another driver to operate the vehicle; (2) the person knew or reasonably should have known that the other driver was careless, reckless, and incompetent; and (3) an injury was

caused by the careless and reckless driving of the automobile.." *Myers v. Bhullar*, 609 F.

Supp. 3d 1232, 1236-37 (W.D. Okla. 2022) (citing *Green v. Harris*, 2003 OK 55, 70 P.3d

866). Oklahoma's standard is similar to standards in sister jurisdictions. *See Ostmeyer v.

McDowell,* No. 87-1720-K, 1991 WL 228338, at *5 (D. Kan. Oct. 24, 1991) ("Under the

doctrine of negligent entrustment, liability is not premised upon the negligence of the

driver; rather, the issue is whether the entruster knew or should have known he was

entrusting an automobile to an incompetent or habitually careless driver"); *Morris v.

Giant Four Corners, Inc*., 294 F. Supp. 3d 1207, 1213 (D.N.M. 2018) (in New Mexico,

"the plaintiff must show that the defendant entrusted his [chattel] to another whom the

defendant knew or should have known was incompetent, and whose incompetence caused

the plaintiff's injuries."); *Phipps v. Brunkhorst Trucking, Inc*., No. 21-CV-03464-RM-

NRN, 2023 WL 3305935, at *4 (D. Colo. May 8, 2023) ("Plaintiff must show that (1)

Jensen permitted Mr. McKnight to use the truck; (2) the truck was under Jensen's control,

and (3) Jensen either knew or should have known that Mr. McKnight was likely to use

the truck in such manner as to create an unreasonable risk of harm to others"); *Mock v.

Fitzgerald*, 21-CV-42-SWS, 2021 WL 7209535, at *3 (D. Wyo. June 16, 2021) ("The

general rule is that in order to establish liability under the theory of negligent entrustment

the plaintiff must prove that the entruster was negligent in supplying the instrumentality

to an incompetent person"); *Mafua v. McKenzie*, No. 1:18-CV-00064-HCN, 2019 WL

5310244, at *5 (D. Utah Oct. 21, 2019) ("an automobile may be regarded as [a dangerous

instrumentality] in the hands of an incompetent driver, and an owner thereof who

6

knowingly entrusts its operation to such a driver is liable, even in the absence of statute, for the proximate consequences of its operation in such hands").

As one may expect, this common law standard for negligent entrustment originates in the early twentieth century. From the beginning, courts have focused on (a) the driver's carelessness, recklessness, and incompetence and (b) the owner/entrustor's knowledge of that carelessness, recklessness, and incompetence. *See Waddle v. Stafford*, 1924 OK 309, 230 P. 855; *Coker v. Moose*, 1937 OK 67, 68 P.2d 234 ("The evidence shows that the defendant Jennie Lasley knew that her son . . . was a careless, reckless, and incompetent driver, and that she knew of a number of serious accidents he had had while driving her car, and that she paid the repair bills. It was common knowledge in the neighborhood that he was a dangerous driver, and different persons talked with her about it, but she persisted in permitting him to drive her car."); *McCarley v. Durham*, 1954 OK 35, ¶ 10, 266 P.2d 629; *Berg v. Bryant*, 1956 OK 336, ¶ 7, 305 P.2d 517 ("We must first determine whether the evidence is sufficient to show that the defendant knew that [the driver] was not qualified to operate the pick-up motor vehicle at the time he turned it over to her to operate"); *Barger v. Mizel*, 1967 OK 38, ¶ 24, 424 P.2d 41, 46 ("To hold defendant liable for entrusting his vehicle to a careless, reckless or negligent driver, it was necessary to show defendant had knowledge Lang was incompetent, careless or reckless, or that in exercise of ordinary care defendant should have known this by reason of the facts and circumstances").

In determining whether a driver is careless, reckless, and incompetent, plaintiffs bear the burden of proving the driver to be "unfit and unqualified[.]" *Fox v. Mize*, 2018

7

OK 75, 428 P.3d 314, 323; *Gregory v. Lindamood Heavy Hauling, Inc.*, No. CIV-22-327-R, 2022 WL 2792203, at \*3 (W.D. Okla. July 15, 2022); *Sanchez v. S&H Transportation, Inc*., No. 20-CV-0374-CVE-SH, 2022 WL 1213127, at \*4 (N.D. Okla. Apr. 25, 2022); *St. Clair v. Edwards*, No. CIV-19-00981-PRW, 2021 WL 1131711, at \*4 (W.D. Okla. Mar. 24, 2021); *Kohler Transp., Inc. v. Cent. States Trucking Co*., No. CIV-19-1019-R, 2021 WL 1254682, at \*2 (W.D. Okla. Apr. 5, 2021) ("one minor accident involving a stopped vehicle in a parking lot does not establish that McCaleb's driving created an unreasonable risk of bodily harm to others") (citing *Phillips v. Super Servs. Holdings, LLC*, 189 F. Supp. 3d 640, 653 (S.D. Tex. 2016) ("A record with two moving violations or accidents within a two-year period prior to the accident is also insufficient."); *Annese v. U.S. Xpress*, CIV-17-655-C, 2019 WL 1246207 (W.D. Okla. Mar. 18, 2019); *Amparan v. Demir*, No. 1:15-CV-00045 WJ/GJF, 2017 WL 4542875, at \*4 (D.N.M. Feb. 13, 2017) ("New Mexico law requires evidence that the driver was actually incompetent"); *Sinclair v. Hembree & Hodgson Constr., LLC*, CIV-18-938-D, 2020 WL 3965010 (W.D. Okla. July 13, 2020). *Waller Truck Co. v. Morton*, CIV.A. 13-2249-KHV, 2014 WL 5139723, \*3 (D. Kan. Oct. 10, 2014) ("An incompetent driver is one, who by reason of age, experience, physical or mental condition, or known habits of recklessness, is incapable of operating a vehicle with ordinary care")(emphasis added); *Lawson v. Parkwood Indus. LLC*, No. 3:21-CV-247-ECM, 2023 WL 1997704, at \*4 (M.D. Ala. Feb. 14, 2023) ("[T]he incompetence of a driver is measured by the driver's demonstrated ability (or inability) to properly drive a vehicle . . . Alabama courts have been especially reluctant to allow a negligent hiring claim when the driver's accidents or speeding tickets were in the

8

distant past.") (citation omitted)); *Green v. Markovitch*, 385 F. Supp. 3d 1190, 1197 (N.D. Ala. 2019) ("While the evidence presented by Plaintiffs does show [the] driving record was not completely free of mistakes, this is insufficient to support a finding of general incompetence. Under Alabama law, [the driver] was not required to be a perfect driver."); *Craft v. Triumph Logistics, Inc*., 107 F. Supp. 3d 1218, 1225 (M.D. Ala. 2015) ("Though Williams has been cited for several moving violations, the diverse circumstances behind each citation do not establish the kind of 'habitual negligence' that amounts to incompetence"); *Askew v. R & L Transfer, Inc*., 676 F. Supp. 2d 1298, 1303 (M.D. Ala. 2009) ("'Incompetence' is defined as the 'state or fact of being unable or unqualified to do something.' . . . These blemishes on an otherwise clean professional driving record do not amount, under the law, to incompetence. The law requires that a driver have had a 'demonstrated ability to properly drive a vehicle," [citation] it does not require that he have a record completely free of mistake.'"); *Fleming v. Stifolter*, 656 F. Supp. 2d 764, 772 (W.D. Tenn. 2009) (applying Arkansas law) ("[a]bsent evidence of the driver's incompetence as a driver before the accident, there could be no basis for" negligent entrustment).

Most importantly, the entrustor's **knowledge** of the carelessness, recklessness, and incompetence is a separate and indispensable element of a claim. *See Hinshaw v. Padda*, No. 4:20-CV-474-TCK-SH, 2021 WL 4899109 (N.D. Okla. Oct. 20, 2021) (dismissing claim upon Rule 12(b)(6) motion for failure to allege facts that owner knew driver was incompetent); *Nichols v. Gipson*, No. CIV-21-779-D, 2021 WL 5762800, at *2 (W.D. Okla. Dec. 3, 2021) ("Knowledge of the driver's incompetence is a necessary component

of a negligent entrustment claim"); *Conway v. Lone Star Trans., LLC*, No. 19-CV-658-CVE-FHM, 2020 WL 609750, at \*1 (N.D. Okla. Feb. 7, 2020); *Johnson v. Loutzenhiser*, No. CIV-20-704-D, 2020 WL 7327320, at \*1 (W.D. Okla. Dec. 11, 2020); *Fox*, 428 P.3d at 314 (denying motion to dismiss because plaintiff had alleged employer knew driver was taking prescription narcotic banned by the FMCSR); *Schriner v. Gerard*, No. CIV-23-206-D, 2023 WL 3138026, at \*3 (W.D. Okla. Apr. 27, 2023) ("The Court disagrees with Plaintiff's argument that it is reasonable to infer that Century Trucking had knowledge of Mr. Gerard's incompetence based solely on his alleged violation of multiple state and federal safety regulations, which led to the collision"); *Loyd v. Salazar*, No. CIV-17-977-D, 2020 WL 7220790, at \*4 (W.D. Okla. Dec. 7, 2020) (holding company's failure to reasonably inquire into driver's background was basis to defeat summary judgment motion); *Rimes v. MVT Servs., LLC*, No. 19-CV-0282-CVE-JFJ, 2020 WL 2559942, at \*6 (N.D. Okla. May 20, 2020) (holding trucking company entitled to summary judgment based on lack of knowledge of alleged incompetence); *Sheppard v. R&S Transp., LLC*, No. 5:16CV141-RWS-CMC, 2018 WL 2292818, at \*13 (E.D. Tex. Apr. 25, 2018), report and recommendation adopted, No. 5:16CV141-RWS-CMC, 2018 WL 2287611 (E.D. Tex. May 18, 2018) ("[t]he employer must be aware of the peril caused by its employee, but demonstrate by his acts or omissions that it does not care"); *Colombo v. Flemings*, 43 F.3d 1465 (4th Cir. 1994) ("to prove liability for negligent employment or retention, the plaintiff must show: . . . incompetency, by inherent unfitness or previous specific acts of negligence . . . [and] either actual notice to the master of such unfitness or bad habits, or constructive notice") (citation omitted));

*Gummo v. Ward*, 57 F. Supp. 3d 871, 876–77 (M.D. Tenn. 2014) ("[t]he focus of the tort of negligent entrustment is the degree of knowledge the supplier of the chattel has or should have concerning the entrustee's propensity to use the chattel in an improper or dangerous fashion") (citation omitted); *Wright v. Weaver*, 681 F. Supp. 2d 786, 788–89 (E.D. Tex. 2010) ("The issue, therefore, is whether Weaver, 'by virtue of his ***driving habits***, was careless and reckless to the extent that he was not suitable or adequate for the purpose of safely operating an automobile.', . . . A driving record that contains listed violations or accidents, but has no indication of guilt or fault is insufficient to show that the individual was a habitually reckless or incompetent driver.") (quoting *Hines v. Nelson*, 547 S.W.2d 378, 386 (Tex. App.-Tyler 1977, no writ); *Broesche v. Bullock*, 427 S.W.2d 89, 93 (Tex.App.-Houston [14th Dist.] 1968)).

Comparing this particular case with *Annese v. U.S. Xpress*, CIV-17-655-C, 2019 WL 1246207 (W.D. Okla. Mar. 18, 2019), *St. Clair v. Edwards*, CIV-19-981-PRW, 2021 WL 1131711 (W.D. Okla. Mar. 24, 2021), and *Kohler Transport, Inc. v. Central States Trucking Co.*, CIV-19-1019-R, 2021 WL 1254682 (W.D. Okla. Apr. 5, 2021) proves this assertion true.  In *Annese*, this Court denied U.S. Xpress's Motion for Partial Summary Judgment on Annese's negligent entrustment because U.S. Xpress's driver had five preventable accidents on his driving record in the three years before the accident. For the Court, these prior accidents showed a history of careless driving, and that a jury could reasonably determine that U.S. Xpress negligently entrusted the driver with its truck. Here, there is simply nothing in the record that rises to that level. Bellah did not have any note on his record within three years of the accident. And there is nothing else about his

11

on-road behavior – such as on-the-job drinking[2] – upon which Gulley can support a negligent entrustment claim. In this way, this case is more like *St. Clair*.

In *St. Clair*, a driver was involved in an accident fifteen years before the subject accident, and had a previous CDL suspension. Other than that, the company's driver had "a clean driving record, a valid license, and no collisions or tickets between his hire and the collision with Plaintiff." 2021 WL 1131711 at \*4. More specifically, the Court stated:

> The evidence Plaintiff adduces is (1) that Edwards was previously fired from a company because he had not turned in his log-book on time, and (2) that Edwards got into one accident fifteen years before Hopeland hired Edwards. Neither incident serves as evidence that in any way indicates Edwards was an unsafe driver or that Hopeland negligently entrusted its driving authority to Edwards.
>
> An actionable claim for "negligent entrustment exists when a person who owns or has possession and control of an automobile allows another driver to operate the automobile when the person knows or reasonably should know that the other driver is careless, reckless and incompetent, and an injury results therefrom." Plaintiff asserts no factual allegations that establish that Hopeland knew or reasonably should have known that Edwards was a careless, reckless or incompetent driver. There is no allegation, for example, that Hopeland entrusted Edwards to drive its vehicles despite knowing that he was drinking on the job regularly, or that he was recently involved in several preventable accidents.
>
> By contrast, *Plaintiff asserts various log-related allegations, which have nothing to do with the collision at issue in this case or Edwards' driving ability in general.* And with respect to the accident fifteen years ago, Edwards simply side-swiped another tractor-trailer that had illegally parked on the side of the highway at night during a rainstorm. Further, even though Plaintiff alleges that Edwards' license was temporarily suspended shortly thereafter, that suspension was the result of an unpaid fine, not the accident itself. Finally, at the time of hire, Edwards had at least forty-six years of basic driving experience, sixteen years of commercial driving experience, a clean driving record, a valid license, and no collisions or tickets between

_____

[2] *See Sinclair v. Hembree & Hodgson Constr., LLC*, CIV-18-938-D, 2020 WL 3965010 (W.D. Okla. July 13, 2020).

his hire and the collision with Plaintiff. Accordingly, Plaintiff fails to make a sufficient showing that Edwards was a "careless, reckless and incompetent" driver as required by Oklahoma law. (emphasis supplied).

*Id.* If anything, Bellah's driving record is cleaner than Edwards. Bellah has never been terminated or had his CDL suspended or revoked. Given that the company in *St. Clair* was held to have ***not*** negligently entrusted its truck to Edwards, the appropriate result is the same here.

Finally, in *Kohler*, on April 5, 2021, the Hon. David L. Russell entered summary judgment for the Defendant on a similar claim for "negligent entrustment". In that case, the defendant trucking company argued the plaintiff trucking company had "negligently entrusted" its tractor-trailer to its employee because the trucker had been diagnosed with sleep apnea and involved in a prior "preventable" accident. Judge Russell determined that the sleep apnea diagnosis did not render the driver unfit to drive under the FMCSRs. 2021 WL 1254682 at \*2. Moreover, Judge Russell determined that "[o]ne minor accident involving a stopped vehicle in a parking lot does not establish that McCaleb's driving created an unreasonable risk of bodily harm to others." *Id.* (citing *Phillips v. Super Servs. Holdings, LLC*, 189 F. Supp. 3d 640, 643 (S.D. Tex. 2016) ("A record with two moving violations or accidents within a two-year period prior to the accident is also insufficient"). After an analysis of the undisputed facts and Oklahoma law, Judge Russell ultimately decided as follows:

> In conclusion, construing the evidence and all reasonable inferences in CST's favor, CST fails to present any evidence that Kohler knew or should have known that McCaleb was likely to operate the tractor-trailer in a reckless or incompetent manner. Accordingly, Kohler is entitled to summary judgment on CST's claim for negligent entrustment.

*Id.* at \*4. Like *St. Clair*, *Kohler* involves an issue about whether a company negligently entrusted a truck to a driver with a relatively clean history. In *St. Clair*, the driver was terminated once and then involved in an accident 15 years before the subject accident. In *Kohler*, the driver had sleep apnea and a preventable accident. Both cases warranted summary judgment. In the present case, Bellah's record is ***more*** clean. There is no evidence of tickets, suspensions, revocations, or accidents with three years of the accident. The inescapable conclusion here is that this case is right in line with *St. Clair* and *Kohler*. American Wind did not negligently entrust its truck to Bellah, as a matter of law.  Therefore, Defendants are entitled to Judgment in their favor and against Plaintiff for that claim.

**PROPOSITION TWO:  BOWMAN'S  DRIVING  BEHAVIOR  WAS  THE DIRECT, INTERVENING, AND SUPERSEDING CAUSE OF THE ACCIDENT.**

Under Oklahoma law, the three essential elements of a claim of negligence are (1) a duty owed by Defendants to protect Bowman from injury, (2) Defendants' failure to properly perform that duty, and (3) Defendants' injury being proximately caused by a breach. *Gaines–Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 620 (10th Cir. 1998) (quoting *Lockhart v. Loosen,* 1997 OK 103, 943 P.2d 1074, 1079). An event's proximate cause is that "which in a natural and continuous sequence, unbroken by an independent cause, produces the event and without which the event would not have occurred." *See Johnson v. Mid–South Sports, Inc.,* 1991 OK 17, 806 P.2d 1107, 1109; *Comcast Corp. v. Nat'l Ass'n of Afr. American-Owned Media*, 140 S.Ct. 1009, 1014 (2020); *Chamberland v. Roswell Osteopathic Clinic, Inc.*, 27 P.3d 1019, 1023 (N.M. Ct. App. 2001); *Eisenhour*

*v. Cnty.*, 897 F.3d 1272, 1280 (10th Cir. 2018) ("Proximate causation requires that the harm have been reasonably foreseeable to the wrongdoer, particularly when there has been a superseding cause, such as the Commission's decision to close the court") (citing *Martinez v. Carson*, 697 F.3d 1252, 1255–56 (10th Cir. 2012).

Although causation is usually a question of fact, "the question becomes an issue of law when there is no evidence from which a jury could reasonably find the required proximate, causal nexus between the careless act and the resulting injuries." *Hartman v. U.S.*, 923 F.Supp.2d 1287, 1290 (W.D. Okla. 2013) (citing *Gaines–Tabb, Inc.,* 160 F.3d at 620; *Henry v. Merck & Co.,* 877 F.2d 1489, 1495 (10th Cir. 1989). *See also Train v. City of Albuquerque*, 629 F. Supp. 2d 1243, 1253 (D.N.M. 2009) (quoting *Thom v. Bristol-Myers Squibb Co*., 353 F.3d 848, 855 (10th Cir. 2003). Where evidence, together with all the inferences that may be properly deduced therefrom, is insufficient to create a causal connection between the alleged wrong and injury, the issue of proximate cause becomes a question of law. *Hartman*, F.Supp.2d at 1287 (citing *Lockhart,* 943 P.2d at 1080 (citation omitted). And when the matter is one of *pure speculation or conjecture*, or the probabilities equally balanced, summary judgment is proper. *Hardy v. Sw. Bell Tel. Co.,* 1996 OK 4, 910 P.2d 1024, 1027. Speculation is the antithesis of proximate cause. *Butler v. Okla. City Pub. Sch. System,* 1994 OK CIV APP 22, 871 P.2d 444, 446.

Proximate cause has two elements: cause in fact and legal causation. *Worsham v. Nix,* 2006 OK 67, 145 P.3d 1055, 1066 n. 9. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 347 (2013); *Wilcox v. Homestake Mining Co.*, 619 F.3d 1165. Cause in fact deals with the "but for" consequences of an act; Bellah's conduct would be a cause of the

event *if* the event would not have happened but-for his conduct. *Id.* Legal causation, on the other hand, concerns a determination of whether legal liability *should* be imposed, but only after cause-in-fact has been established. Legal liability takes commons sense and policy into account. As stated above, proximate cause must be based on something more substantial than mere speculation and conjecture. *Id.* at 1065 (citation omitted). *See also Murrow v. Penney*, 2023 OK 91, 535 P.3d 1275.

Bellah's driving was not the proximate cause of the accident. Bowman's decision to stop on the tracks was the proximate cause of the accident. There is no genuine dispute about the following material facts:

- Bowman and Bellah had worked together as pilot car and tractor-trailer numerous times before the subject accident.

- Bowman and Bellah had crossed this particular railroad crossing numerous times together before the subject accident.

- Each time, Bowman and Bellah were the last of three trucks to drive through the crossing, hearing the tracks were clear over the radio before crossing.

- Bowman used the radio to communicate with Bellah about this particular railroad crossing numerous times before the subject accident.

- Never, during any of these prior crossings, did Bowman stop on the tracks.

In short, it was not foreseeable to Bellah that Bowman would act differently than she had numerous times before. Bellah expected Bowman to proceed through the crossing as she had before, knowing that the tracks were clear from the previous two pilot cars to cross. Then she stopped on the tracks right in front of him. No one will ever know why she did,

16

as she passed away before filing this lawsuit. Those who were, however, testified that she stopped, that she had not stopped before, and did not communicate to Bellah that she was going to stop. Any argument to the contrary would be based on hearsay or speculation, neither of which are suitable bases to defeat summary judgment. The record evidence to-date shows Bowman stopped on the tracks, and the accident would not have happened if she had simply crossed the same way she had crossed a dozen times before. Accordingly, the Court should enter summary judgment in Defendants' favor and against Plaintiff with respect to Plaintiff's negligence claim.

## PROPOSITION THREE:   PUNITIVE DAMAGES ARE INAPPROPRIATE IN THIS CASE AND SHOULD NOT BE SUBMITTED TO THE JURY

The Supreme Court of Oklahoma has emphasized that exemplary damages "are highly penal" in nature and should be imposed with caution. *McLaughlin v. Nat'l Benefit Life Ins. Co*., 1988 OK 41, 678 P.2d 716, 719; *Sw. Greyhound Lines, Inc. v. Rogers*, 1954 OK 40, 267 P.2d 572, 574. The fundamental policy of punitive damages is not focused on compensating. *Cox v. Theus*, 1977 OK 158, 569 P.2d 447, 450. Instead, the purpose is to punish the wrongdoer and deter similar wrongdoing. *See Dayton Hudson Corp. v. Am. Mut. Liability Ins. Co*., 1980 OK 193, 621 P.2d 1155, 1158; *Cox*, 569 P.2d at 450 ("[t]he theory is the punishment of the offender, for the general benefit of society").

On the question of punitive damages, the trial court, "acting as gatekeeper," must first determine whether there is any competent evidence demonstrating that a defendant engaged in the kinds of malicious conduct enumerated by 23 O.S. § 9.1. *Cardenas v. Schneider*, CIV-14-386-R, 2020 WL 5947588, *2 (W.D. Okla. Oct. 7, 2020). Next, it is

17

for the Court to determine whether Stanley has or can show by "clear and convincing evidence" that such conduct occurred. *Sides v. John Cordes, Inc*., 1999 OK 36, 981 P.2d 301, 305. Reckless disregard is established by showing that the defendant "was either aware, or did not care, that there was a substantial and unnecessary risk that [his] conduct would cause serious injury to others." *Gowens v. Barstow*, 2015 OK 85, 364 P.3d 644, 652 (quoting OUJI-Civ. No. 5.6). *See Thurmond v. CRST Expedited, Inc*., CIV-18-1142-R, 2020 WL 50060036 (W.D. Okla. Jan. 13, 2020). "The mere happening of an accident as a result of inadvertence on the part of the responsible party is insufficient to constitute gross negligence." *Cardenas*, 2020 WL 5947588 at \*3 (quoting *Fulton v. Cutter Equip., LLC*, CIV-17-261-RAW, 2018 WL 1385963, at \*2 (E.D. Okla. Mar. 19, 2018) (citing *Hinds v. Warren Transport, Inc*., 1994 OK CIV APP 52, 882 P.2d 1099, 1102)); *Annese v. U.S. Xpress, Inc*., CIV-17-655-C, 2019 WL 1246207, at \*4-5 (W.D. Okla. Mar. 18, 2019).

Oklahoma appellate courts have routinely determined that ordinary car accidents -- even those involving tragic results including death -- do not give rise to a viable claim for punitive damages as a matter of law. For example, in *Fuller v. Neundorf*, 1956 OK 31, 293 P.2d 317, plaintiff sued defendant who ran a stop-sign and caused a T-bone accident at night, where the vision of the opposite vehicle was obscured by wheat. The trial court entered judgment for the defendant and plaintiff appealed. On appeal, plaintiff contended that it was an error for the trial court to withhold punitive damages from consideration of the jury. The Supreme Court held, "To entitle the plaintiff to recover exemplary damages in an action sounding in tort, the proof must show some element of fraud, malice, or

oppression[.]" *Id.* at 320. Similarly, in *Hinds v. Warren Transport, Inc., supra*, plaintiff was rendered quadriplegic after running into a Warren Transport tractor-trailer rig parked in the right-lane of the highway. Plaintiff presented evidence that the Warren Transport driver failed to turn on emergency flashers or put out any hazard lighting, cones or otherwise. Despite these facts, the Oklahoma Court of Civil Appeals determined that the "[t]rial court erred in submitting the issue of punitive damages to the jury." *Hinds*, 882 P.2d 1099, 1002. Specifically, the Court found "the mere happening of an accident as a result of inadvertence on the part of the responsible party is insufficient to constitute gross negligence." *Id*. Finally, in *White v. B.K., Trucking Co., Inc*., 405 F.Supp.1068 (W.D. Okla. 1975), the Court determined that punitive damages were not warranted when the driver of a large truck ran a stop sign and collided with another automobile, killing two women. The Court held that the case involved a tragic accident, but did not involve such gross negligence as could be deemed equivalent to an evil intent or indicate a reckless disregard for the rights of others. *Id*. at 1070. As such, punitive damages were not warranted. *Id*. at 1071.

Here, the undisputed evidence shows an unfortunate accident, nothing more. There is nothing in the record to suggest that Bellah acted intentionally or engaged in malicious conduct. Likewise, there is no evidence that Bellah's alleged acts or omissions were so extreme that there could be any inference of evil intent or malice, let alone any indication of a reckless disregard for the rights of others. Bellah was not intoxicated, or fatigued, or speeding, or driving with an invalid license, or driving without medical clearance. At most, Gulley's claim is that Bellah should have stopped before making contact with the

19

rear of Bowman's pilot car. Gulley's claim, even if taken at face value, is not even close to what this Court has previously concluded is necessary for the submission of punitive damages to a jury. In a similar case, *Annese v. U.S. Xpress*, CIV-17-655-C, this Court held that summary judgment was proper on a punitive damage claim in a case involving a truck driver with *five* (5) accidents on his driving record whom Plaintiff claimed fled the scene of an accident.

No extenuating circumstances exist which are necessary to justify the imposition of punitive damages. This was a simple rear-end motor vehicle accident caused, at worst, by miscommunication between Bowman and Bellah. Sometimes an accident is just that, and historically good drivers have accidents on occasion. Further, case law is clear that mere accidents, *per se*, are insufficient to allow the consideration of a punitive damages award against a driver. There must be something more. Given the record evidence, even when taken in the light most favorable to Plaintiff, Bellah's actions do not rise to the level of reckless disregard for the rights of others or intentional misconduct. Accordingly, Defendants are entitled to summary judgment on Plaintiff's unsupported punitive damage claim, as a matter of law.

## IV. CONCLUSION

WHEREFORE, Defendants, American Wind Transport Group, LLC and Larry Bellah, respectfully request that this Court enter summary judgment in their favor and grant any other relief the Court deems appropriate.

/s/ Bryan E. Stanton
Bryan E. Stanton, OBA #19225
Charles A. Schreck, OBA #32863
PIERCE COUCH HENDRICKSON
   BAYSINGER & GREEN, L.L.P.
1109 N. Francis Ave.
Oklahoma City, Oklahoma 73126
Telephone: 405-235-1611
Facsimile: 405-235-2904
bstanton@pierceouch.com
cschreck@piercecouch.com
**Attorneys for Defendants,**
**American Wind Transport Group, LLC**
**and Larry Bellah**

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of December 2023, a true and correct copy of the above and foregoing was e-mailed to the following counsel of record:

Caleb M. Redman
Greg S. Keogh
PARRISH DEVAUGHN
3601 N. Classen Blvd.
Oklahoma City, OK 73118
caleb@parrishdevaughn.com

-and-

Michael Green
Joseph Farzam
FARZAM LAW FIRM
11766 Wilshire Blvd., Ste. 280
Los Angeles, CA 90025
joseph@farzamlaw.com
**Attorneys for Plaintiff**

/s/ Bryan E. Stanton
Bryan E. Stanton

21